**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **The Lincoln Electric Company,** | ) | **CASE NO. 1:08 CV 2346** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Technitrol, Inc. et al.** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

## INTRODUCTION

This matter is before the Court upon defendant TTI, Inc.'s Motion for Summary Judgment (Doc. 72). This is a breach of contract case. For the following reasons, defendant's motion is GRANTED.

## FACTS

Plaintiff, The Lincoln Electric Company, brings this action against defendants, Technitrol, Inc., Pulse Engineering, Inc., Avnet, Inc., and TTI, Inc. Plaintiff alleges that Pulse, a wholly-owned subsidiary of Technitrol, breached express warranties in the design and manufacture of transformers for use in plaintiff's welders because the transformers failed to

1

conform to the design specifications developed jointly by plaintiff and Pulse. Plaintiff alleges that not following the design specifications led to failure of some of the Pulse transformers that were installed in plaintiff's welders.

Plaintiff and Pulse worked together to design the Pulse transformers beginning in 2001. Defendants Avnet and TTI are electrical products distributors. Plaintiff purchased the Pulse transformers from defendant TTI beginning in September 2003 through December 2004. In late 2004, plaintiff switched to purchasing the transformers through defendant Avnet.

Plaintiff had purchased electrical products from defendant TTI (hereinafter "defendant") since at least 2000. On January 1, 2000, plaintiff and defendant entered into a Supply Agreement for various electrical products that expired pursuant to its express terms on January 1, 2002. The agreement may have been verbally renewed, but in any case expired no later than January 1, 2003. Thus, the purchase of the transformers was not governed by the Supply Agreement.

Plaintiff purchased the transformers by electronically transmitting purchase orders to defendant that contained the following language: "THIS ORDER IS SUBJECT TO LINCOLN ELECTRIC'S TERMS AND CONDITIONS EFFECTIVE JANUARY 1, 2001." Although the terms and conditions were not attached to the purchase orders, defendant received plaintiff's terms and conditions as part of a request for proposal package in early November 2003.

Plaintiff discovered defects in the Pulse transformers, including the transformers purchased from defendant, in June 2007. Plaintiff notified both Pulse and Avnet of the defects by mid-July 2007, but did not notify defendant. Defendant was not notified of the defects until it was served with the complaint in this case on September 8, 2008.

The complaint contains four claims for relief.  Count one is a claim for breach of express warranty against Technitrol and Pulse.  Count two is a claim for negligent misrepresentation against Technitrol and Pulse.  Count three is a claim for promissory estoppel against Technitrol and Pulse.  Count four is a claim for breach of contract against TTI and Avnet, wherein plaintiff alleges that "[i]n the Supply Agreement signed between TTI and Lincoln, TTI warranted that products purchased would conform to the applicable manufacturer's specifications for such products."

Defendant now moves for summary judgment as to count four of the complaint.  Plaintiff opposes the motion.

### **STANDARD OF REVIEW**

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)).  *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material fact rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  A fact is material only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 255).  *See also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).

Summary judgment is appropriate when a party who bears the burden of proof at trial fails to make a showing sufficient to establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  When the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  "The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 252).  Moreover, if the evidence is "merely colorable" or is not "significantly probative," the court may grant summary judgment.  *Anderson*, 477 U.S. at 249-50.

**ANALYSIS**

Defendant argues that it is entitled to summary judgment on three grounds:  plaintiff's breach of contract claim fails as a matter of law because the Supply Agreement did not govern

plaintiff's purchase of transformers from defendant; plaintiff did not give defendant pre-suit notice that the transformers were defective; and plaintiff did not notify defendant of the defective transformers within a reasonable time.

### A. Breach of Contract Claim

Under Fed. R. Civ. P. 8(a)(2), a plaintiff is required only to give "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of a federal pleading is "to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Colonial Refrigerated Trans., Inc. v. North Carolina Occidental Fire and Cas. Co.,* 705 F.2d 821, 825 (6th Cir. 1983) (citing *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707 (8th Cir. 1979) (internal quotations omitted)). In *Colonial Refrigerated,* the Sixth Circuit adopted the reasoning of *Oglala,* which further stated:

> '[T]he federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage,' provided that such a shift in the thrust of the case does not work to the prejudice of the opposing party.

*Id.* (quoting *Oglala,* 603 F.2d at 714 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1219 at 145)). This reasoning is consistent with Fed. R. Civ. P. 54(c), which provides that except in the case of a default judgment, "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." *Id. See also Bluegrass Center, LLC v. U.S. Intec, Inc.,* 49 Fed. Appx. 25, 30-31 (6th Cir. 2002) (affirming judgment that was based on promissory estoppel even though promissory estoppel was not pleaded in the complaint).

Defendant argues that the sole basis of plaintiff's breach of contract claim is the Supply

Agreement between the parties that expired no later than January 1, 2003.  In support, defendant points to the language of the complaint in count four:

> 52. Lincoln purchased the Pulse Transformers through suppliers TTI and Avnet.
>
> 53. In the Supply Agreement signed between TTI and Lincoln, TTI warranted that products purchased would conform to the applicable manufacturer's specifications for such products.
>
> 54. In the Supply Agreement signed between Avnet and Lincoln, Avnet warranted that products purchased would conform to the applicable manufacturer's specifications for such products.
>
> 55. Pulse Transformers purchased through TTI and Avnet did not conform to the specifications agreed upon by Pulse and Lincoln.
>
> 56. TTI and Avnet breached their contracts by delivering defective Pulse Transformers to Lincoln.
>
> 57. As a direct consequence of TTI and Avnet's breach of contract, Lincoln has been severely damaged.

Defendant also cites to plaintiff's response to defendant's interrogatory:

> **Interrogatory No. 5**: Identify the alleged contract(s) between TTI and Lincoln that Lincoln contends governs the purported sale and/or supply of the Transformers.
>
> **Answer**:  Subject to and without waiving its General Objections, Lincoln states that there is a January 1, 2000 Supply Agreement between Lincoln and TTI that governed the sale and/or supply of some of the Pulse Transformers.  Lincoln is not aware of any other contract between Lincoln and TTI relating to the sale or supply of the Pulse Transformers.

Because the parties now agree that the Supply Agreement did not govern the purchase of the transformers, and because plaintiff identified no other basis for its breach of contract claim in the

6

complaint, defendant argues that plaintiff's breach of contract claim fails as a matter of law.

Plaintiff responds that the allegations in the complaint properly plead a breach of contract claim even though it references the expired Supply Agreement. Plaintiff states that during discovery, it first became aware that the Supply Agreement had expired prior to plaintiff's purchase of the transformers. Plaintiff asserts that it entered into a stipulation with defendant that "Lincoln's claim against TTI is based on Lincoln's contention that TTI supplied non-conforming goods manufactured by Pulse." Plaintiff also argues that during discovery, plaintiff's 30(b)(6) witness testified that the purchase of the transformers was governed by plaintiff's purchase orders referencing its terms and conditions. Plaintiff further argues that defendant has not disputed that valid contracts, in the form of plaintiff's purchase orders, existed for each transformer purchase.

In reply, defendant argues that plaintiff has for the first time in its opposition brief asserted that its breach of contract claim is governed by plaintiff's terms and conditions. Defendant points out that plaintiff has attempted to amend its complaint twice but did not attempt to change the basis of its breach of contract claim. Defendant also argues that it never stipulated or agreed that plaintiff's terms and conditions applied to the transactions at issue in this case, and that plaintiff cannot point to any transaction at issue in this case in which plaintiff transmitted its terms and conditions to defendant. Instead, defendant argues, defendant's receipt of plaintiff's terms and conditions was the result of plaintiff's gathering of general information about its suppliers or requests for proposals that were unrelated to the transformers at issue.[1]

---

[1] In its reply, defendant states in a footnote that certain documents submitted as evidence by plaintiff, including at least one document produced by defendant to plaintiff, attached to plaintiff's attorney's declaration should be stricken because plaintiff's attorney

Upon review and construing the evidence in the light most favorable to plaintiff, the Court finds that plaintiff's claim does not fail as a matter of law. Plaintiff alleges in its complaint that it purchased transformers from defendant and that those transformers did not conform to the manufacturer's specifications. Plaintiff further alleges that defendant breached its contract with plaintiff by delivering defective products. The parties agree that defendant sold Pulse transformers to plaintiff. Indeed, defendant does not dispute that valid purchase orders governed the sales.[2] Defendant also had notice prior to plaintiff's opposition brief that the breach of contract plaintiff alleges could be governed by a contract other than the Supply Agreement, as the parties became aware during discovery that the Supply Agreement expired no later than January 1, 2003, and defendant did not sell the transformers to plaintiff until September 2003. Additionally, John Suszek, plaintiff's 30(b)(6) witness, testified during his deposition that the purchase orders acted as contracts. (Suszek Depo. 76:11-13.) Finally, defendant does not argue that it is prejudiced by plaintiff's assertion that the breach of contract claim is based on the purchase orders. Under the circumstances of this case, the Court finds that defendant had fair notice that plaintiff's claim was a breach of contract claim based upon plaintiff's purchase of the Pulse transformers from defendant, and the resulting delivery of allegedly defective goods. The Federal Rules do not require more. *Colonial Refrigerated,* 705

---

does not have the requisite knowledge to testify to the authenticity of the documents. Defendant also states that certain of these documents constitute inadmissible hearsay, but does not specify which documents. To the extent that defendant intended to move the Court to strike any evidence submitted by plaintiff, the Court denies the motion at this time as defendant has not appropriately supported it.

[2] Defendant does appear to dispute whether plaintiff's terms and conditions governed the purchase orders. The terms of any contract between plaintiff and defendant, however, are not at issue in defendant's summary judgment motion.

F.2d at 825.  Accordingly, defendant is not entitled to summary judgment on the ground that the Supply Agreement expired prior to plaintiff's purchase of the transformers.

### B. Notice

Ohio's Uniform Commercial Code requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Ohio Rev. Code § 1302.65(C).  Two purposes underlie giving notice of the breach:

> First, express notice opens the way for settlement through negotiation between the parties.  Second, proper notice minimizes the possibility of prejudice to the seller by giving him ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.

*Standard Alliance Indus., Inc. v. Black Clawson Co.,* 587 F.2d 813, 826 (6th Cir. 1978) (applying Ohio law).  Whether notice is adequate and reasonable is generally a question of fact to be determined from the totality of the circumstances.  *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.,* 537 N.E.2d 624, 636 (Ohio 1989); Ohio Rev. Code § 1301.10(B).

Defendant argues that plaintiff's complaint did not provide adequate notice of the alleged breach, and that plaintiff should have notified defendant prior to filing the lawsuit.  Defendant argues that because plaintiff did not notify it prior to filing the complaint, it was deprived of the opportunity to investigate or to cure the alleged defects, or to settle the dispute prior to litigation.  Defendant also argues that even if the complaint provided notice of the breach under Ohio Rev. Code § 1302.65, such notice was not "within a reasonable time."  Defendant points out that plaintiff served defendant with the complaint 15 months after plaintiff discovered the alleged

9

defects in the transformers, while plaintiff notified Pulse and Avnet more than a year earlier.

Plaintiff responds that Ohio does not have a per se rule requiring pre-suit notice of a breach. Plaintiff argues that whether it provided notice within a reasonable time is a question of fact that is ordinarily inappropriate for summary judgment. Plaintiff further argues that the totality of the circumstances demonstrates that defendant had reasonable notice: defendant had a chance to negotiate with plaintiff and explore settlement after the complaint was filed; defendant never identified a single action that it would have taken to investigate or cure the alleged defects; the defects could not be remedied because the transformers were already incorporated into welders that had been sold to plaintiff's customers; and when plaintiff gave defendant the opportunity to inspect several welders with defective transformers on November 12, 2009, defendant did not do so. Plaintiff argues that these circumstances demonstrate that defendant was not prejudiced by not receiving pre-suit notice.

Defendant replies that permitting the complaint to serve as the only notice defeats the purposes of requiring notice. Defendant also argues that plaintiff has not met its burden in proving that it gave defendant notice within a reasonable time. Defendant further argues that defendant's settlement or inspection activities after the complaint was filed are irrelevant to whether plaintiff's notice was reasonable. Finally, defendant argues that it was prejudiced as a result of not receiving pre-suit notice because it had to engage counsel and incur legal expenses in defending a lawsuit, and because it was denied the opportunity to use customer complaint procedures similar to those that Avnet used in response to plaintiff's pre-suit notice.

Upon review, and construing all evidence in the light most favorable to plaintiff, the Court finds that under these circumstances defendant did not receive adequate or reasonable

10

notice of the breach. Both parties cite to *Chemtrol* in support of their respective positions. The facts are briefly as follows. Chemtrol manufactured pressure-sensitive labels, which required the use of an arch dryer to evaporate excess moisture from the silicone mixture used to coat the labels. *Id.* at 624. Chemtrol hired Midland-Ross to design and build such a dryer system. *Id.* Later that year, the system malfunctioned due to a design flaw, and Chemtrol engaged a repair service and notified Midland-Ross of the problem. Midland-Ross sent representatives to investigate. *Id.* After a second malfunction and further repairs, the system operated, but Chemtrol had already sustained substantial loss. Chemtrol sued its insurers, American Manufacturers Mutual and Lexington, for refusing to cover the loss. *Id.* Lexington brought a third-party complaint against Midland-Ross, which was consolidated with American's separate action against Midland-Ross for indemnification. The claims against Midland-Ross were based on, *inter alia,* breach of express and implied warranties and breach of contract. *Id.* Midland-Ross moved for summary judgment on Chemtrol's failure to provide adequate and timely notice of the alleged breach, arguing that it was not informed of the breach until Lexington and American brought suit against it in December 1982, two years after the breach and a full year after Chemtrol sued the insurers. *Id.* at 636.

The Ohio Supreme Court held that although no formal notice was given, written notice is not required by the statute and a reasonable person could conclude that Midland-Ross knew of the alleged breach shortly after the damage occurred, and reversed the trial court's grant of summary judgment to Midland-Ross. *Id.* at 638. The court then stated if the fact-finder determined on remand that notice was *not* given shortly after Chemtrol sustained the damage, the "question then becomes whether Lexington's filing of its third-party complaint constituted

11

sufficient notice." *Id.* The court noted that many courts have held the filing of a complaint cannot constitute adequate notice. *Id.* The court then held:

> We decline to adopt such an absolute rule, as we believe in a
> proper case the filing of a civil complaint could serve as notice of
> breach. However, this is not such a case, as Lexington's suit was
> filed a full two years after the damages were sustained. We agree
> with the courts below that Lexington's third-party complaint
> would be inadequate as a matter of law.

*Id.*

Since *Chemtrol*, Ohio courts and federal courts applying Ohio law have continued to hold that a plaintiff must notify a defendant of the alleged breach prior to the complaint. *See St. Clair v. Kroger Co.,* 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008) ("If a plaintiff fails to plead pre-litigation notice, her breach of warranty claim must be dismissed. St. Clair's failure to notify Kroger of its alleged breach before bringing this lawsuit precludes her from proceeding further with her claim." (internal citations omitted)); *Jones v. Davenport,* No. 18162, 2001 Ohio App. LEXIS 226, at *22 (Ohio Ct. App. Jan. 26, 2001) (citing § 1302.65(C) and holding "[b]ecause Jones failed to notify Snyder of the breach after he discovered, or at least should have discovered the color discrepancy, he is barred from recovery under an express warranty theory"); *Delorise Brown, M.D., Inc. v. Allio,* 620 N.E.2d 1020, 1022 (Ohio Ct. App. 1993) (holding that appellant had not proved a breach of warranty claim where, *inter alia,* there was no evidence appellant notified appellee of the breach).

The Court recognizes that under *Chemtrol,* Ohio does not have a per se rule that the filing of a complaint cannot constitute notice under § 1302.65(C)(1), but the Ohio Supreme Court was clear that a complaint could only constitute notice in "a proper case." The circumstances in this case are similar to the circumstances described by the court in *Chemtrol* that would preclude the

12

complaint from constituting sufficient notice: defendant had no prior knowledge of the defects, and the complaint was filed a long period of time after plaintiff's damages were sustained. Plaintiff has not established that this is a proper case. Accordingly, the Court finds that the complaint in this case did not constitute notice under § 1302.65(C)(1).

Even if the complaint was sufficient notice, the Court finds that the notice was not reasonable. Plaintiff is correct that whether notice is reasonable is ordinarily a question for the jury. The Court finds that in this case, however, the notice was unreasonable as a matter of law. *See Chemtrol,* 537 N.E.2d at 638; *Bronze Bushing Co., Inc. v. North Am. Mfrg. Co.,* No. 68852, 1996 Ohio App. LEXIS 1419, at *27 (Ohio Ct. App. April 4, 1996) (affirming summary judgment and holding that "BBC's notification to appellees in June 1992 that they negligently designed the furnace system in 1990[] was untimely, especially in light of BBC's appreciation of the alleged negligence in mid-1991").

Plaintiff has the burden of proof on this issue, but has offered no evidence that its 15-month delay in notifying defendant of the alleged breach was reasonable.[3] The unexplained

---

[3] Plaintiff cites several cases from other jurisdictions in support of its argument that notice is not unreasonable where the party being notified is not prejudiced by the delay. Neither party cites any case from Ohio where prejudice is considered in determining whether delay was reasonable. Additionally, the cases plaintiff cites are distinguishable on their facts. In *City of Wichita v. U.S. Gypsum Co.,* 828 F. Supp. 851, 857 (D. Kan. 1993), an asbestos case, the court found that failing to give notice before filing suit was not fatal to plaintiff's claim because defendant suffered no prejudice and the plaintiff was a consumer (rather than a merchant buyer) and had suffered property damage, therefore a less stringent standard was appropriate. In *Hays v. General Electric Co.,* 151 F. Supp. 2d 1001, 1013 (N.D. Ill. 2001), notice was given eight to nine months after discovery of the defect and *prior* to filing suit. *Praeger v. Allergan, Inc.,* No. 89-C-6721, 1990 WL 70875, at *2 (N.D. Ill. May 2, 1990) involved a consumer personal injury and the court held the consumer to a different standard than a merchant-buyer. Finally, *Wal-Mart Stores, Inc. v. Wheeler,* 586 S.E.2d 83, 86-87 (Ga. Ct. App. 2003) also involved a consumer personal injury.

delay becomes even more remarkable in light of the evidence that plaintiff knew shortly after it discovered the defects that defendant sold some of the defective transformers to plaintiff, that plaintiff notified its other supplier and the manufacturer within a few months of discovering the defects, and that plaintiff engaged in pre-litigation discussions relating to the defects with these other parties.  Although plaintiff argues that the totality of the circumstances show that defendant had reasonable notice, the Court finds that defendant's activities subsequent to the filing of the complaint have no bearing on what defendant might have done had it been notified of the alleged breach within a shorter period of time.  Moreover, plaintiff does not describe the circumstances that resulted in its own delay in notifying defendant– certainly a factor in considering the "totality of the circumstances."  Construing the evidence in the light most favorable to plaintiff, the Court finds that notice was not reasonable.  Accordingly, defendant is entitled to summary judgment.

### **CONCLUSION**

For the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

     /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 6/2/10